[Crim. No. 13095.    Second Dist., Div. Four. Mar. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CLEOPHAS AUSTIN, Defendant and Appellant.

Cleophas Austin, in pro. per., and Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip G. Samovar, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—A jury found defendant guilty of two sex offenses, committing lewd acts on the person of a child under 14 years of age, (Pen. Code, § 288) and attempted incest. (Pen. Code, §§ 664 and 285.) Following mentally disordered sex offender proceedings, he was denied probation and sentenced to consecutive prison sentences. This is an appeal from the judgment.

Defendant challenges the sufficiency of the evidence to support his conviction of attempted incest. His daughter testified that, on the evening of February 11, 1965, defendant came into the room where she and her sister slept and got into bed with her. After pulling off the bottom of her night clothes, he started moving up and down on top of her. He attempted to put his penis into her vagina but she prevented him from doing so. This went on for about 15 minutes. When she began to cry and her sister woke up, defendant got out of bed. The victim's sister testified she saw defendant get into bed with the victim. An investigating officer testified that, on February 16, 1965, defendant told him, after first being advised of his constitutional rights, that on several occasions he had placed his erect penis between his daughter's legs and moved it back and forth. The above evidence is amply sufficient to support defendant's conviction of attempted incest. His testimonial denial of any wrongdoing merely created a conflict in the evidence which was resolved against him by the trier of fact. It is well established that an appellate court may not reweigh such conflicts. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

Defendant contends that his statement to the investigating officer was shown to be involuntary. He testified that he was coerced and threatened into making it. But the officer, and another officer who was also present, both testified that his statement was made freely and voluntarily; that no one threatened or coerced him. Here again, a conflict in the evidence arose which was resolved with the jury believing the People's version of what took place.

■ It is urged that the court below erred in refusing to permit defendant to represent himself at the trial. The record does not indicate defendant asked to represent himself at the trial. Prior to the trial, the deputy public defender who represented defendant, informed the court that defendant wanted to have him relieved and another attorney appointed to represent him. Defendant stated to the court that he had lost confidence in his counsel because that morning his counsel told him it would be best if he "would cop out to a statutory rape charge"; that the district attorney had indicated that if he did so, the People would drop the incest charge. The deputy public defender denied having made such a statement to defendant. The judge then informed defendant that he would not appoint another counsel for him. He added that, neither would he permit him to represent himself because he was not qualified to do so. ■ The law is clear that, "Counsel appointed by the court to represent a defendant must be accepted by him in the absence of some 'compelling reason to the contrary.' [Citations.]" (*People* v. *Lee,* 249 Cal.App.2d 234, 242 [57 Cal.Rptr. 281].) None was shown here. We note that defendant did ask leave to represent himself at the time of sentence. The court then properly concluded, upon questioning defendant and upon examining the record of the case, that defendant lacked sufficient understanding to represent himself.

Defendant in propria persona raises several additional contentions relating to the criminal proceedings. We have examined them and conclude that they are totally without foundation and that no useful purpose would be served in discussing them.

The record indicates that the civil commitment proceedings leading to defendant's commitment under the mentally disordered sex offender act were procedurally defective.

On the date the jury returned its verdicts, the court made an order (pursuant to Welf. & Inst. Code, § 5504) appointing two doctors to examine defendant. On October 5, 1965, a hearing was held, with defendant and his counsel present, and at which the two doctors testified. On the basis of their testimony, the court found defendant to be a probable mentally disordered sex offender. On October 22, 1965, the court committed defendant for a 90-day observation period in Atascadero State Hospital. On March 23, 1966, after receiving a report from the superintendent of the hospital, the court adjudged defendant to be a mentally disordered sex offender

and committed him (pursuant to Welf. & Inst. Code, § 5512) to the Department of Mental Hygiene to be confined in the Atascadero State Hospital for an indeterminate period. The hospital authorities thereafter found him not to be amenable to treatment and returned him to court where criminal proceedings were again reinstated and he was sentenced.

From the record, it appears that no certification of defendant for hearing and examination was made as required by Welfare and Institutions Code, section 5501.5; nor was a form of certification delivered to defendant as required by section 5501. Further, there is nothing to indicate that defendant was advised by the judge of his rights to make a reply and to produce witnesses, as is required by section 5503. Without the required notice and advice, the hearing at which defendant was adjudged a probable mentally disordered sex offender, lacked validity.

"The complete failure to prepare and to deliver to petitioner [defendant] the necessary certification, and the court's failure to advise him of his rights as the code requires, taken together, constitute a denial of procedural due process, and require that the commitment be set aside. [Citations.]" *(In re Kramer,* 257 Cal.App.2d 287, 289 [64 Cal.Rptr. 686].) (See also *People* v. *Succop,* 67 Cal.2d 785 [63 Cal.Rptr. 569, 433 P.2d 473]; *People v. Berry,* 257 Cal.App.2d 731 [65 Cal.Rptr. 125].)

Although defendant is no longer confined under either the order committing him for the 90-day observation period or the order of commitment for the indeterminate period, the matter is not moot. With a proper notice and the required advice as to his rights to reply and to produce witnesses, defendant may be able to put on evidence to convince the trial court that there was not probable cause to believe he was a mentally disordered sex offender. (See *People* v. *Succop, supra,* 67 Cal.2d 785, 790.) As the court in *Succop* pointed out (at p. 790): "Such a finding would be relevant to the question whether probation should be granted and to the matter of parole if a prison sentence was imposed. Furthermore, defendant is entitled to the opportunity to clear his name of the adjudication that he is a probable mentally disordered sex offender. [Citations.]"

The judgment is reversed to the extent that it sentences defendant directly to imprisonment in a state prison, and is otherwise affirmed; the orders committing defendant to Atascadero State Hospital and the order denying probation are

vacated; defendant is ordered returned to the superior court for a hearing to determine whether there is sufficient cause to believe him to be a mentally disordered sex offender, and for such further proceedings as the trial court deems proper under Welfare and Institutions Code, sections 5511.7 and 5512.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied April 5, 1968, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1968.